# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

**Gregory Maggi**

v.

**Warden, New Hampshire State Prison**

Case No. 17-cv-253-PB
Opinion No. 2024 DNH 105

## MEMORANDUM AND ORDER

Gregory Maggi began this case several years ago by filing a petition for habeas corpus in this court, raising more than eighty distinct claims for relief. I disposed of many of Maggi's claims in a memorandum and order granting in part and denying in part the warden's motion for summary judgment. Doc. 62. Here, I address the warden's renewed summary judgment challenge to Maggi's remaining claims. See Doc. 66.

## I.     BACKGROUND[1]

### A.     Underlying Facts

Beginning in 2009, Maggi obtained space in a facility in Ashland known as "the Factory." Jury Trial Tr. at 176, 1113.[2] Maggi's rented space contained

---

[1]     I draw the background facts verbatim from my prior memorandum and order. Doc. 62. The facts come from the record before, and the decisions of, the state courts involved in Maggi's trial, post-conviction litigation, and appeals. See Cullen v. Pinholster, 563 U.S. 170, 181 (2011).

[2]     For clarity and convenience, citations to "Doc. No. ___" refer to docket entries in the current case, Maggi v. Warden, No. 17-cv-253 (D.N.H. filed

an office, various cars, a "house bus," a "party bus," a work trailer, and two large trampolines. Id. at 134, 1110, 1113.

On October 31, 2010, eleven-year-old H.C. was spending time with a friend behind the Factory when she was approached by Maggi. Id. at 329. Maggi, who was then twenty-nine years-old, invited the girls inside to jump on his trampoline. Id. at 329, 1107. Maggi and H.C. developed a friendship, and H.C. eventually introduced Maggi to one of her friends, twelve-year-old D.B. Id. at 208, 210, 330-31. Beginning in the summer of 2011, H.C. and D.B. went to the Factory several times a week to jump on Maggi's trampolines. Id. at 208, 213-14, 330-31. On at least one occasion that summer, Maggi served alcohol to the young girls. Id. at 212-13, 331-33, 341. Maggi also provided D.B. with a "white substance" that D.B. would snort through a straw and that Maggi said was cocaine. Id. at 227-28.

In the fall of 2011, D.B. introduced Maggi to several of her other friends, including M.D., J.M., and S.M, all of whom were between twelve and

June 22, 2017); citations to "Motion Hr'g Tr." refer to sequentially paginated transcripts of a motion hearing held on March 26 and 27, 2014 in Maggi's trial court case, State v. Maggi, No. 215-2013-cr-55 (N.H. Sup. Ct. Dec. 22, 2014); citations to "Jury Trial Tr." refer to sequentially paginated transcripts from Maggi's trial, which was held August 25 through September 5, 2014, in State v. Maggi, No. 215-2013-cr-55 (N.H. Sup. Ct. Dec. 22, 2014); and citations to "Habeas Hr'g Tr." refer to sequentially paginated transcripts from the hearing on Maggi's petition for habeas corpus in Maggi v. Warden, No. 217-2017-cv-325 (N.H. Sup. Ct., Nov. 8, 2019).

fifteen years old. Id. at 353, 356, 537, 539, 720, 722. Maggi gave J.M. and S.M

his business card and told them that they could use his trampolines anytime.

Id. at 357-58, 539-40. The group of girls would visit Maggi at the Factory

frequently, where he would provide them with alcohol, marijuana, cocaine,

and crack cocaine. Id. at 368, 445, 491, 543-45, 564, 643-44, 649.

On one occasion, M.D. spent the night with Maggi in his "house bus."

Id. at 234-36, 248. On another occasion, Maggi kissed J.M. and S.M. and told

them that he wished he could "do stuff" with them, but that he would "get in

a lot of trouble" because they were not "old enough." Id. at 619-20. Maggi

showed J.M. and S.M. sex toys and pornography and, upon learning that J.M.

and S.M. were in a romantic relationship, encouraged the two girls to engage

in sexual acts with each another while he watched. Id. at 445, 553, 557, 563-

64, 647-49.

A few months later, in November 2011, Maggi started having sex with

S.M. and J.M. Id. at 460, 487. Maggi had sex with the girls individually and

together on multiple occasions and provided them with sex toys. Id. at 380-

81, 389-90, 487-91, 532-33, 554-59, 564-66, 634, 637. This continued until

approximately December 2011, when S.M. ended her relationship with J.M.

and stopped seeing Maggi. Id. at 561-62, 636-37. Maggi continued to have sex

with J.M. until she was grounded in January 2012 and could not leave to

visit Maggi for a month. Id. at 370, 423.

Once J.M. was no longer grounded, she visited Maggi to obtain marijuana. Id. at 428-29, 441, 518. Before giving J.M. the drugs, Maggi put his hands in J.M.'s pants and touched her vagina, even though she told him no. Id. at 435-41, 518-21, 1092.

A few months later, in June 2012, D.B. and M.D. introduced their friend, J.D., to Maggi. Id. at 662, 667, 679. J.D., who was twelve years old at the time, went to the Factory on a few occasions. Id. at 660. On one occasion, Maggi forcibly pulled J.D. onto his lap. Id. at 671-73, 733-35, 759. On another occasion, Maggi served alcohol to J.D. and D.B. Id. at 662-63.

## B.    Investigation

A few months later, in the fall of 2012, J.D.'s father discovered inappropriate Facebook messages between Maggi and his daughter. Id. at 698, 702. He alerted the other parents and provided the Facebook messages to the police. Id. at 89-90, 315, 446, 528. The police spoke with J.M. and S.M, who told the police that Maggi had sexually assaulted them and provided them with drugs. Id. at 89, 307, 321, 569, 791. The girls provided the police with various items that Maggi had given them, including sex toys, Maggi's business card, and a pair of his sweatpants. Id. at 791-92, 922-23.

The victims were later interviewed at the Child Advocacy Center (CAC) in a recorded interview. In addition to speaking about the accusations against Maggi, S.M. told the CAC investigator that, a few years ago, her uncle "raped

[her]" and made her sister "give him head." Doc. 40-4 at 13-15. S.M. stated that she thought her father "told . . . DCYF" and that DCYF "kind of asked [her] about it." Id. at 14. The CAC investigator stated that she was going to look into the matter, although it is unclear what, if any, follow up occurred. Id.

In January 2013, the police spoke with Maggi in a recorded interview. Maggi stated that he believed the police wanted to speak with him about "various nefarious activities with children," and admitted to spending time with the group of young girls at the Factory. Jury Trial Tr. at 807-08. Maggi admitted that J.M. and S.M spent the night with him in his bed but denied having sexual contact with them or any other under-aged girls. Id. at 808-11.

Shortly after the interview, the police obtained a warrant and executed a search of the Factory. Id. at 803-04, 855-57, 870, 966. The police recovered Maggi's computers and hard drives, as well as various sex toys and pornographic videos. Id.

In February 2013, a grand jury indicted Maggi on thirteen felony charges, including three charges of aggravated felonious sexual assault, seven charges of felonious sexual assault, two charges of endangering the welfare of a child, and three charges of distribution of a controlled substance. Id. at 28-35. Maggi was also charged with several misdemeanor offenses,

including five charges of simple assault and one charge of exposing a minor to
harmful material. Id.

## C.    Criminal Proceedings

### 1.    Pre-Trial Proceedings

Maggi initially retained Attorney Mark Sisti to represent him in the
criminal proceedings. Doc. 28 at 55. After obtaining several continuances,
Sisti withdrew from the case and Attorney Simon Mayo of the New
Hampshire Public Defender's Office was appointed as counsel. Id. at 55-56.
Shortly thereafter, Maggi filed a motion for self-representation. Id. at 56. The
court held a hearing and granted Maggi's motion after a lengthy colloquy
advising Maggi of his rights. Id. Attorney Adam Hescock of the New
Hampshire Public Defender's Office was appointed as standby counsel. Id.
Attorney Michael Anderson also filed a limited appearance on Maggi's behalf
to assist Maggi with certain motions. Id. at 58.

One of the motions filed by Maggi sought to question some of the
victims about aspects of their sexual past. Doc. 40-3 at 12; see State v.
Howard, 121 N.H. 53, 60-61 (1981) (noting that a defendant may admit
evidence of a witness's "specific prior sexual activity" only "[u]pon a showing
of particular relevance") (quoting State v. Johns, 615 P.2d 1260, 1263-64
(Utah 1980)). At the hearing on his motion, Maggi told the court that he
wished to question S.M. about the allegations she made to CAC against her

uncle, claiming that it was relevant to her "knowledge to fabricate." Motion Hr'g Tr. at 54.

The prosecutor, Assistant County Attorney (ACA) Melissa Pierce, told the court that she had spoken with S.M. about the allegations during the prior week. Id. at 55-56. ACA Pierce stated that S.M. "indicated" that her uncle "touched her" on "her chest area" then "put her hand down into her lap." Id. at 56. S.M. denied, however, that "anything occur[ed] with [her] uncle that was similar to what happened with Mr. Maggi" and stated that the incident was never reported to the police. Id. ACA Pierce, not wanting to traumatize S.M. further, did not ask for further details. Id.

Although Maggi did not have a transcript of S.M.'s CAC interview at the hearing, he represented to the court that he believed S.M. had previously "mention[ed] fellatio and sex" as well as "something about DCYF." Id. at 58. Maggi asserted that S.M. was now "saying completely different story," and that he should be permitted to question her on the matter. Id. Following the hearing, the court issued a brief order denying Maggi's Howard motion, noting that it was both untimely and insufficiently specific to meet Maggi's burden of demonstrating that the allegations were relevant and more probative than prejudicial. Doc. 40-3 at 3-4.

2.     Trial Proceedings

Shortly after the motion hearing, Maggi retained Attorney Peter Decato to take over his representation. Doc. 28 at 58. After a few more continuances, the case proceeded to a jury trial.

At the trial, the State presented testimony from each of the victims, as well as several other children who had spent time with Maggi at the Factory. J.M. testified about having sex with Maggi approximately "every other day," both individually and with S.M. Jury Trial Tr. at 379-80. She also testified that she witnessed Maggi have sex with S.M. and use "sex toys" on her. Id. at 381.

S.M. provided a similar account to the jury, stating that she had sex with Maggi and engaged in "threesomes" with J.M. and Maggi on multiple occasions. Id. at 557-59, 637. S.M. testified specifically about one occasion when her friend, T.T., walked in on her and Maggi engaging in oral sex. Id. at 563-64. T.T. corroborated this account, testifying that she saw S.M. and Maggi in "very close, intimate contact." Id. at 1089.

On two separate occasions during the trial, Decato renewed Maggi's request to question S.M. about the allegations against her uncle. On the first occasion, Decato represented to the judge that, according to Maggi, S.M. "reported that she was raped" then "later said it didn't happen." Id. at 655. Both the court and ACA Lara Saffo, the new prosecutor on the case,

questioned the accuracy of Maggi's representations. Id. Because Decato did not have with him a transcript of the CAC interview or ACA Pierce's statements to provide to the court as an "offer of proof," the court declined to revisit its prior ruling. Id. at 655-56.

Decato renewed his request again later in the trial, this time providing the court with a transcript of S.M.'s CAC interview. Id. at 944. Decato asserted that ACA Pierce had previously told the court that S.M. "recanted" those allegations and argued that he should be able to use the recantation to impeach S.M. Id. at 946. ACA Saffo again questioned whether it was true that ACA Pierce told the court that S.M. recanted her allegations but stated that, in any event, the court would have taken that into consideration in issuing its initial ruling. Id. The judge rejected Decato's request, noting that Maggi had the relevant information "for a long, long time" and didn't present "anything new" to warrant re-opening the matter mid-trial. Id. at 949.

The State proceeded to present a number of other witnesses, including D.B., who testified to her interactions with Maggi. Over Maggi's objection, the State entered into evidence Facebook messages between Maggi and D.B. that contained sexual references and innuendo. Doc. 40-4 at 20. In one of the messages, Maggi invited D.B. to come by the Factory, noting that he could "think of a few fun things [they] can do" and that they could "find some toys or something to play with." Jury Trial Tr. at 243-44. In another message,

Maggi told D.B. that he "love[s] sex" and that "[s]ex is way too much fun." Id.
at 247. D.B. then asked Maggi if he "d[id] anything" with M.D. the night that
M.D. slept over at the Factory. Id. at 248. Maggi responded "[n]othing all that
fun" and denied having kissed M.D., which Maggi stated "would have fallen
under the category of fun." Id. Maggi told D.B. that he had "hop[ed] [D.B.]
would stay" that night, noting that he didn't think M.D. "finds [him] all that
attractive." Id.

The State also showed the jury the video of Maggi's interview with the
police. Id. at 868. The video was partially redacted by order of the court based
on the court's conclusion that some statements in the interview were
inadmissible. Doc. 40-4 at 11. For example, the court redacted references in
the interview to the victims' consensual sexual activities with third parties
and Maggi's refusal to take a polygraph test. Id. at 11-12. The jury
nonetheless saw substantial portions of Maggi's interview, including portions
where he admitted to communicating with the witnesses over Facebook and
spending significant time with the young girls at the Factory. Jury Trial Tr.
at 1237-38, 1256, 1264.

At the close of the State's case, Decato successfully moved to dismiss
two of the charges against Maggi for insufficient evidence. Id. at 1021, 1024.
In presenting Maggi's defense as to the remaining charges, Decato focused
his efforts on undermining the victims' credibility. Decato cross-examined

J.M. and S.M. at length and was able to highlight various inconsistencies in their testimony and establish that they made some untruthful statements to investigators. See, e.g., id. at 459-60, 617. Decato also called a number of witnesses to testify about when Maggi removed the trampolines from the Factory and the dates that the victims first disclosed the sexual assaults, in an attempt to undermine the children's timeline of events. See, e.g., id. at 1037, 1040.

Finally, Maggi took the stand in his own defense. Maggi denied the allegations that he had had sexual relations with any of the victims or that he provided them with drugs. He admitted to regularly exchanging Facebook messages with D.B. but asserted that he did not send the sexually explicit messages shown to the jury. Id. at 1137. Maggi attempted to assert that his Facebook had been hacked, but he was prevented from doing so after the State objected. Id. at 1137-38.

Maggi then addressed the video of his interview and asserted that it did not reflect his "complete interview." Id. at 1188. Maggi noted that the video omitted his multiple requests to speak with a lawyer and that "there [were] other things in the interview that went completely missing." Id. Maggi then testified about how the "pixel size" in the video was suspicious and that he believed someone "opened [the video] up in an editing software, remove[d] the parts they didn't want anyone to see, and then re-film[ed] it so that you

couldn't see it in the metadata." <u>Id.</u> Maggi concluded by stating that "[t]here were parts [of the video] that were redacted by the Court, and there were parts that were illegally removed," at which point the State objected. <u>Id.</u> at 1188-89.

At sidebar, the prosecutor argued that Maggi's testimony inappropriately conveyed to the jury that the State was "redacting stuff inappropriately." <u>Id.</u> at 1189. The court agreed that, because Maggi was not qualified to testify about technical aspects of the video, he was "engaging in conjecture and speculation," and his testimony was "completely inadmissible." <u>Id.</u> at 1189-90. The court agreed to give a curative instruction, without objection. <u>Id.</u> at 1192.

The following day, the court informed the jury that the video had, in fact, been redacted pursuant to a court order and that the jury was "not to consider Mr. Maggi's testimony on that subject at all" or "speculate as to what" was redacted from the video. <u>Id.</u> at 1235.

The defense rested at the close of Maggi's testimony and delivered closing arguments. Decato's arguments principally focused on calling into question the children's testimony, telling the jury that the case came down to who they "f[ound] most believable." <u>Id.</u> at 1316.

Following two days of deliberation, the jury found Maggi guilty of seven counts of felonious sexual assault, three counts of distribution of a controlled

drug, and two counts of simple assault. Id. at 1379-88. Maggi was sentenced to five 3.5 to 7 year prison sentences to run consecutively, for a total sentence of 17.5 to 35 years in prison.

3.    Appellate Proceedings

Following Maggi's conviction, Decato filed a notice of mandatory appeal with the New Hampshire Supreme Court raising four claims of error. Doc. 1-1 at 3. Decato eventually withdrew from the case, and Attorney David Rothstein entered an appearance on Maggi's behalf. Doc. 28 at 62.

Rothstein submitted a brief to the New Hampshire Supreme Court that did not address the issues raised in Decato's notice, but rather briefed three distinct issues. Specifically, Rothstein asserted that the trial court erred by (1) prohibiting Maggi from cross-examining S.M. about her recanted sexual assault allegations, (2) allowing the state to introduce Maggi's Facebook messages with D.B. into evidence, and (3) instructing the jury to disregard Maggi's testimony that the video had been impermissibly edited. Doc. 40-1 at 5. Maggi sought leave to file a pro se supplemental brief raising nine additional issues, but his request was denied. Doc. 28 at 31-34.

The New Hampshire Supreme Court entered an order rejecting Maggi's claimed errors and affirming his conviction. Doc. 1-3. In considering Maggi's claim that he should have been permitted to ask S.M. about her recantation, the court first noted that "the record is not clear that S.M. recanted a prior

13

sexual assault allegation" because ACA Pierce never clarified what S.M. meant when she stated that what happened with her uncle was not "similar to" what happened with Maggi. Id. at 1. The court nonetheless declined to resolve the matter, instead concluding that any error in excluding cross-examination was harmless beyond a reasonable doubt. Id. The court reasoned that, in light of the overwhelming evidence of Maggi's guilt—including, most notably, the victims' corroborated testimony and eyewitness accounts of abuse—the "impeachment value of cross-examining S.M. concerning her recantation. . . would not have affected the verdict." Id. at 2.

The court also concluded that the trial judge acted within his discretion in admitting the Facebook conversations with D.B., noting that the messages were relevant to Maggi's "sexual intent" towards the victims and not unduly prejudicial. Id. at 4. Finally, the court affirmed the trial judge's instruction to disregard Maggi's testimony about the taped interview. Id. at 5. The court noted that, viewed in context, the instruction did not require the jury to disregard any testimony from Maggi that was "based on his recollection [of the interview], the video recording" was impermissibly edited. Id. (emphasis in original). Rather, the instruction only required the jury to "disregard his testimony about the court-ordered redactions." Id. Accordingly, the court concluded that, contrary to Maggi's arguments on appeal, he had been

permitted to testify "about his <u>recollection</u> of the interview." <u>Id.</u> (emphasis in original).

Rothstein filed a motion asking the court to reconsider its order, which the court denied. Doc. 1-4 at 1.

**D.    State Habeas Proceedings**

Attorney Sven Wiberg filed a habeas corpus petition on Maggi's behalf in New Hampshire Superior Court (state habeas court) pursuant to N.H. Rev. Stat. Ann § 534:1. <u>See</u> Petition for Writ of Habeas Corpus, <u>Maggi v. Warden</u>, No. 217-2017-cv-00325 (N.H. Sup. Ct., Nov. 8, 2019) (hereinafter "State Petition").[3] The petition principally asserted that Maggi received constitutionally ineffective assistance of counsel from Decato, Rothstein, and his various pre-trial attorneys. <u>Id.</u> at 2-6. In addition, Maggi argued that the state trial court had "effectively" denied Maggi his right to represent himself. <u>Id.</u> at 6.

The state habeas court held an evidentiary hearing on Maggi's petition over the course of seven days. Doc. 28 at 54. Maggi testified on his own behalf for four of those days. Towards the end of Maggi's testimony, the proceedings

---

[3]    Maggi's state habeas petition was not submitted in the record but is nonetheless subject to judicial notice. <u>See</u> Fed. R. Evid. 201; Stan Lee Media, Inc. v. Walt Disney Co., 774 F.3d 1292, 1298 n.2 (10th Cir. 2014).

were stayed for a period of time so that Wiberg could obtain additional information about Maggi's mental health. Habeas Hr'g Tr. at 515-17, 520.

When the proceedings resumed, Wiberg withdrew from the case and Maggi began representing himself with some assistance from his sister, Attorney Katherine Maggi. Id. at 534-35. Maggi called Decato and Rothstein to the stand, who testified at length about their litigation strategies and interactions with Maggi. Id. at 653, 783. Maggi then called a family member who was present for his trial to discuss her observations of counsel's interactions with Maggi. Id. at 538.

The court subsequently issued a thirty-three-page decision denying Maggi's habeas claims. Doc. 28 at 54-86. The court summarily denied Maggi's claims regarding the assistance of his pre-trial counsel, noting that there was no "legal or factual support" for Maggi's assertions and that Maggi "presented no evidence that any of his pre-trial counsel were deficient or that they prejudiced the outcome of his trial." Id. at 64. Turning to Maggi's claims against Decato, the court found that Decato was not constitutionally ineffective at trial. The court reasoned that Decato's decisions were reasonable strategic choices and, in any event, did not prejudice Maggi since the actions Maggi faulted Decato for failing to take were largely baseless or legally flawed. Id. at 67-69. The court further found that, contrary to Maggi's assertion, Decato had not impermissibly truncated Maggi's trial in order to

prioritize a different trial. Id. at 81-82. The court similarly rejected Maggi's claims against Rothstein, pointing to evidence from the hearing that Rothstein consulted with Maggi regularly and made reasonable strategic decisions about which claims to prioritize on appeal. Id. at 83-84. Finally, the court concluded that Maggi was not denied the right to represent himself. To the contrary, the court found that Maggi was "afforded the right and opportunity to represent himself" and "exercised that right until he decided to proceed with counsel." Id. at 84-85.

Maggi filed a notice of appeal with the New Hampshire Supreme Court challenging the state habeas court's order and asserting various other errors arising out of his criminal trial. Id. at 96-101. The New Hampshire Supreme Court declined Maggi's appeal. Id. at 103.

## II.   <u>STANDARD OF REVIEW</u>

Summary judgment is appropriate when the record reveals "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Tang v. Citizens Bank, N.A., 821 F.3d 206, 215 (1st Cir. 2016). In this context, a "material fact" is one that has the "potential to affect the outcome of the suit." Cherkaoui v. City of Quincy, 877 F.3d 14, 23 (1st Cir. 2017) (quoting Sanchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996)). A "genuine dispute" exists if a factfinder could resolve the

disputed fact in the nonmovant's favor. Ellis v. Fid. Mgmt. Tr. Co., 883 F.3d 1, 7 (1st Cir. 2018).

The movant bears the initial burden of presenting evidence that "it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); accord Irobe v. U.S. Dep't of Agric., 890 F.3d 371, 377 (1st Cir. 2018). Once the movant has properly presented such evidence, the burden shifts to the nonmovant to designate "specific facts showing that there is a genuine issue for trial," Celotex, 477 U.S. at 324, and to "demonstrate that a trier of fact could reasonably resolve that issue in [his] favor." Irobe, 890 F.3d at 377 (quoting Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 5 (1st Cir. 2010)). If the nonmovant fails to adduce such evidence on which a reasonable factfinder could base a favorable verdict, the motion must be granted. Celotex, 477 U.S. at 324. In considering the evidence, the court must draw all reasonable inferences in the nonmoving party's favor. Theriault v. Genesis HealthCare LLC, 890 F.3d 342, 348 (1st Cir. 2018).

## III.   ANALYSIS

A federal court has the power to issue a writ of habeas corpus to a prisoner in state custody "on the ground that [the prisoner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). That power, however, is limited by several statutory and

judge-made rules. Among other requirements, a petitioner ordinarily must exhaust all available state remedies before seeking relief in federal court. Id. § 2254(b)(1)(a). And even when state remedies have been exhausted, relief in federal court may be barred by the court-created procedural default doctrine if an independent and adequate state procedural rule would preclude a state court from considering the federal claim. Shinn v. Ramirez, 596 U.S. 366, 378-79 (2022). Exhaustion and procedural default work in tandem to promote federal-state comity. See id. The exhaustion requirement ensures that state courts are given the first chance to address violations of a state defendant's federal rights, and the procedural default doctrine requires federal courts to give appropriate deference to state procedural rules. Id.

In the discussion that follows, I first demonstrate that all of Maggi's remaining claims are unexhausted and then explain that these claims should be dismissed with prejudice because they also have been procedurally defaulted.[4]

## A.    Exhaustion

To satisfy the exhaustion requirement, a habeas corpus petitioner must present his federal claim to the state's highest available state tribunal. See

---

[4]    Throughout this memorandum and order, I refer to Maggi's federal claims by the claim numbers assigned to the claims by the magistrate judge. See Doc. 31 at 4-17. Appendix A is a claim chart describing the remaining claims.

O'Sullivan v. Boerckel, 526 U.S. 838, 839-40 (1999). If the petitioner fails to raise his claims in any state court, or he raises them at the trial court level but not in an appeal to the highest available appellate court, he has not exhausted his claims. See id. at 845.

The petitioner must also fairly present his claims to the state court as federal claims. See Picard v. Connor, 404 U.S. 270, 276 (1971). He can satisfy this requirement by, among other things,

> (1) citing a specific provision of the [U.S.] Constitution; (2) presenting the substance of a federal constitutional claim in such manner that it likely alerted the state court to the claim's federal nature; (3) reliance on federal constitutional precedents; and (4) claiming a particular right specifically guaranteed by the Constitution.

Gagne v. Fair, 835 F.2d 6, 7 (1st Cir. 1987). In some cases, the petitioner's federal claim may be fairly presented even if it is couched as a state law claim because the state and federal standards are indistinguishable.

Nadworny v. Fair, 872 F.2d 1093, 1099 (1st Cir. 1989). In the end, what matters is "whether it is more likely than not that a reasonable jurist would recognize the constitutional dimensions of the petitioner's claims, given the manner in which those claims were presented." Barresi v. Maloney, 296 F.3d 48, 52 (1st Cir. 2002). If the petitioner cannot satisfy this standard, his claims have not been exhausted. See Adelson v. DiPaola, 131 F.3d 259, 262 (1st Cir. 1997).

Finally, even if the petitioner presents his claims to the state's highest court as federal claims, his claims will not be exhausted if he presents them for the first time in an unsuccessful request for discretionary review. See Castille v. Peoples, 489 U.S. 346, 351 (1989); Gunter v. Maloney, 291 F.3d 74, 81-82 (1st Cir. 2002). When this happens, the exhaustion requirement cannot be satisfied unless further state court review is unavailable because the petitioner has procedurally defaulted on his ability to further litigate his claims in state court. Castille, 489 U.S. at 351.

In the present case, all of Maggi's remaining claims are unexhausted. Several of his claims are unexhausted because he failed to present them to any state court.[5] Others are unexhausted because he presented them as federal claims in superior court but failed to present them to the New Hampshire Supreme Court.[6] Still others are unexhausted because Maggi presented them for the first time to the Supreme Court in a discretionary notice of appeal that the Supreme Court declined to accept.[7]

---

[5]    Claims A(3)(b), A(10), A(11), B(4)(b)(v), B(4)(f)(i), B(5) and B(6).

[6]    Claims B(3), B(4)(a), B(4)(b)(i)-(iv), B(4)(b)(vi)-(ix), B(4)(c), B(4)(d), B(4)(e), B(4)(f)(iii), B(4)(q), and B(4)(r).

[7]    Claims A(3)(d), A(3)(g), A(5), A(13), A(14), A(15), A(16), D(1), D(2), D(3), and D(4).

This leaves only nine claims that I will assume were "presented" to the New Hampshire Supreme Court because they were included in his mandatory notice of appeal, his brief on direct appeal, or his motion to file a pro se supplemental brief. The problem with these claims, however, is that none of them were fairly presented as federal claims. Instead, four of the claims that Maggi characterizes as Confrontation Clause claims were presented in state court as routine challenges to the trial court's evidentiary rulings;[8] one purports to allege a violation of the Fifth Amendment's Grand Jury Clause but was presented in state court as a state law claim that the court improperly allowed the prosecutor to strike the word "salvia" from the indictment;[9] one purports to allege a double jeopardy violation but was presented in state court as a state law claim objecting to the court's imposition of consecutive sentences;[10] one purports to allege a due process violation but was presented only as a state law issue challenging the wording of the indictment;[11] one purports to allege a due process violation but was

---

[8]      Claims A(3)(a), A(3)(e), A(3)(f), and A(3)(h).

[9]      Claim A(1).

[10]      Claims A(9).

[11]      Claim A(8).

presented only as a state law challenge to the form of the evidence;[12] and one purports to allege a due process violation but was presented only as a state law challenge to the court's use of New Hampshire's rape shield law to limit Maggi's ability to cross examine witnesses.[13] Because none of these claims were fairly presented as federal claims, they too are unexhausted.

## B.    Procedural Default

When a petitioner files a "mixed petition" containing both exhausted and unexhausted claims, I ordinarily will either dismiss the petition without prejudice or stay the case to allow the petitioner to return to state court to exhaust his unexhausted claims. See Sena v. Kenneway, 997 F.3d 378, 384 (1st Cir. 2021). However, a federal court need not delay the resolution of a habeas corpus petition for lack of exhaustion when it is clear that independent and adequate state procedural rules would bar further state court consideration of the unexhausted claims. Boerckel, 526 U.S. at 848; Pike v. Guarino, 492 F.3d 61, 73 (1st Cir. 2007); Jordan v. Harpe, No. 24-6090, 2024 WL 4531389, at *3 (10th Cir. 2024); Cooper v. Neven, 641 F.3d 327 (9th Cir. 2011); Bailey v. Nagle, 172 F.3d 1299, 1302-03 (11th Cir. 1999). Accordingly, I look to New Hampshire law to determine whether further efforts by Maggi to exhaust his unexhausted claims would be futile.

---

[12]    Claim A(12).

[13]    Claim A(6)(b).

The New Hampshire Supreme Court has a longstanding rule that a criminal defendant is procedurally barred from raising a claim on collateral review that the defendant could have raised on direct appeal. See Avery v. Cunningham, 131 N.H. 138, 143 (1988); State v. Kinne, 161 N.H. 41, 44-45 (2010). Although the court has recognized an exception for ineffective assistance of counsel claims, see Humphrey v. Cunningham, 133 N.H. 727, 732 (1990), it continues to apply the general rule to other claims that can be raised on direct appeal, see Mallard v. New Hampshire State Prison, 175 N.H. 565, 570 (2023). Further, although an ineffective assistance of counsel claim can be raised in a state habeas corpus motion, the court will summarily dispose of second or successive habeas corpus petitions presenting such claims in the absence of "new facts material to the issue." Gobin v. Hancock, 96 N.H. 450, 451 (1951).

In the present case, Maggi had ample opportunity to present his unexhausted claims either on direct appeal or in his state habeas corpus petition. New Hampshire law will not allow him to exhaust his claims by filing a second habeas corpus petition predicated on the same underlying facts as his first petition. Accordingly, all of Maggi's unexhausted claims are also procedurally defaulted.

A federal habeas court can consider an otherwise procedurally defaulted claim that the petitioner's rights were violated if the petitioner can

show that there was a cause for the procedural default and that prejudice resulted from the alleged constitutional violation. See Wainwright v. Sykes, 433 U.S. 72, 90-91 (1977); see also Edwards v. Carpenter, 529 U.S. 446, 451 (2000). Alternatively, a federal court can maintain habeas jurisdiction over a procedurally defaulted claim, even absent cause and prejudice, if a fundamental miscarriage of justice would result without federal review. See id. I address briefly here these cause-and-prejudice or miscarriage-of-justice exceptions.

Cause "ordinarily turn[s] on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the [s]tate's procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986). For example, constitutionally ineffective assistance of counsel at trial or other constitutional violations can constitute "cause" required to excuse procedural default and preserve the underlying claim for federal habeas review. See, e.g., Coleman v. Thompson, 501 U.S. 722, 753-54 (1991). To prove prejudice a petitioner must demonstrate that the alleged violations of federal law "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." United States v. Frady, 456 U.S. 152, 179 (1982) (emphasis in original).

Maggi attempts to satisfy the cause-and-prejudice test by arguing both that his counsel at various stages was constitutionally ineffective[14] and that he was unconstitutionally prevented from preparing his defense because his access to legal research resources was limited when he was detained pretrial.

The state court reasonably and appropriately addressed each of Maggi's ineffective assistance of counsel claims. See Doc. 28 at 54-86 (going through each of Maggi's ineffective assistance claims). After a multiday hearing, that court issued a thirty-three-page opinion rejecting Maggi's state habeas claim. Id. The court not only looked at each of Maggi's actually raised issues but also considered sua sponte other possible issues with counsel not formally raised in the petition. Id. at 64 (addressing issues with pretrial counsel mentioned only during the hearing conducted by the state habeas court). The New Hampshire Supreme Court denied Maggi's appeal from that order. Nothing in the state habeas court order, applying both federal and state constitutional standards for effective counsel, raises concerns that would rise to the level of "cause" for excusing procedural default for failure to preserve claims at trial.

---

[14]     Insofar as Maggi alleges ineffective assistance of counsel during his state habeas proceedings, such allegations cannot constitute "cause" to excuse procedural default because there is no constitutionally recognized right to counsel during collateral postconviction proceedings. See Davila v. Davis, 582 U.S. 521, 528-28 (2017).

Maggi has also argued that his lack of access to an adequate law library and accommodation for the preparation of his defense during pretrial detention constitutes cause. Doc. 68 at 3. However, these alleged limitations are not sufficient to establish cause. Maggi had the assistance of multiple competent attorneys throughout his state case and regularly contributed to the preparation of his own defense despite alleged limitations on his access to resources.

Even if Maggi could support claims that ineffectiveness of counsel or limited access to resources to prepare a defense at some stage amounted to "cause," these alleged violations of federal law did not prejudice the state proceedings. The state offered overwhelming evidence of Maggi's guilt at trial. The record supports the conclusion that Maggi received not only a fair trial but also a full appeal to the New Hampshire Supreme Court, along with a thorough state habeas hearing reviewing his conviction. None of the ineffective assistance claims or claims regarding Maggi's limited access to legal resources are significant enough to have prejudiced the outcome at any stage.

Finally, without a showing of cause and prejudice, a federal court can only sustain review of procedurally defaulted claims if it would be a fundamental miscarriage of justice not to do so. Schlup v. Delo, 513 U.S. 298, 321 (1995).

> To ensure that the fundamental miscarriage of justice exception
> would remain "rare" and would only be applied in the
> "extraordinary case," while at the same time ensuring that relief
> would be extended to those who are truly deserving, this Court has
> explicitly tied the miscarriage of justice exception to the
> petitioner's innocence.

Id. Maggi's conviction is supported by overwhelming evidence of guilt. None of the issues he raised cast doubt on the sufficiency of the evidence or otherwise support a claim of actual innocence. Accordingly, neither of the exceptions to the procedural default doctrine support my maintaining jurisdiction over the claims in Maggi's petition.

## IV.   **CONCLUSION**

For the reasons explained above, I grant the motion for summary judgment. Doc. 66-1. It being the opinion of this Court that Maggi has made no substantial showing of the denial of a constitutional right, I decline to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Rules Governing § 2254 Cases, Rule 11; 1st Cir. LR 22. The clerk shall enter judgment in accordance with this memorandum and order and close the case.

SO ORDERED.

/s/ Paul J. Barbadoro
Paul J. Barbadoro
United States District Judge

December 12, 2024

cc:   Gregory Maggi, pro se
      Counsel of Record

**Appendix A – Claim Chart**

| No.[15] | Claim | Record |
|---|---|---|
| A(1) | The trial court violated Mr. Maggi's Sixth Amendment right not to be charged with a felony except by a grand jury when it permitted the State to amend three of the indictments against Mr. Maggi by removing "salvia" from the "controlled substances" listed in the indictment, which was a substantive change to an element of the offenses charged. | Doc. 1-1 at 3; Doc. 28 at 34 (state law only). |
| A(3)(a) | The trial court violated Mr. Maggi's [Sixth] Amendment right to confront the witnesses against him, to present evidence in his favor, and to a fair trial, and violated Mr. Maggi's Fourteenth Amendment due process rights when it made evidentiary rulings at Mr. Maggi's trial allowing the State to show a video recording of Mr. Maggi's statement to the police at trial, which Mr. Maggi had alleged had been illegally altered, finding that the redactions to the recording were permissible. | Doc. 40-2 at 18-22 (state law only). |
| A(3)(b) | The trial court violated Mr. Maggi's [Sixth] Amendment right to confront the witnesses against him, to present evidence in his favor, and to a fair trial, and violated Mr. Maggi's Fourteenth Amendment due process rights when it made evidentiary rulings at Mr. Maggi's trial allowing the use of a video recording of Mr. Maggi's statement to the police to be shown at trial when that recording was a "video of a video," and thus violated the "best evidence rule." | NA. |
| A(3)(d) | The trial court violated Mr. Maggi's [Sixth] Amendment right to confront the witnesses against him, to present evidence in his favor, and to a fair | Doc. 28. at 99. |

---

[15]    The claim numbers and language in this chart are drawn from Magistrate Judge Andrea K. Johnston's approved Report and Recommendation, dated December 14, 2022. See Doc. 31 at 4-17.

|  | trial, and violated Mr. Maggi's Fourteenth Amendment due process rights when it made evidentiary rulings at Mr. Maggi's trial allowing multiple State's witnesses to testify to matters unrelated to Mr. Maggi's allegedly criminal actions, where the testimony amounted to character evidence which was inflammatory and unduly prejudiced Mr. Maggi. |  |
|---|---|---|
| A(3)(e) | The trial court violated Mr. Maggi's [Sixth] Amendment right to confront the witnesses against him, to present evidence in his favor, and to a fair trial, and violated Mr. Maggi's Fourteenth Amendment due process rights when it made evidentiary rulings at Mr. Maggi's trial allowing the admission in evidence of Facebook messages exchanged between Mr. Maggi and D.B., a minor, when those conversations were irrelevant to the issues at trial, were inflammatory and unduly prejudicial to Mr. Maggi, and amounted to impermissible character or propensity evidence, as the messages were of a sexual nature and Mr. Maggi was not charged with sexually assaulting D.B., which was inflammatory and unduly prejudiced Mr. Maggi. | Doc. 40-2 at 15-17 (state law only). |
| A(3)(f) | The trial court violated Mr. Maggi's [Sixth] Amendment right to confront the witnesses against him, to present evidence in his favor, and to a fair trial, and violated Mr. Maggi's Fourteenth Amendment due process rights when it made evidentiary rulings at Mr. Maggi's trial not allowing Mr. Maggi to explain at trial why he did not have a conversation with the victims' parents about the victims frequenting Mr. Maggi's place of business. | Doc. 1-1 at 3 (state law only). |
| A(3)(g) | The trial court violated Mr. Maggi's [Sixth] Amendment right to confront the witnesses against him, to present evidence in his favor, and to a fair trial, and violated Mr. Maggi's Fourteenth Amendment due process rights when it made evidentiary rulings at Mr. Maggi's trial not allowing Mr. Maggi to call several witnesses to testify in his defense on the basis that Mr. Maggi had not provided the prosecution with the witnesses' written | Doc. 28 at 96, 97. |

|  | statements, when Mr. Maggi had not obtained and was not in possession of any written statement made by those witnesses. |  |
|---|---|---|
| A(3)(h) | The trial court violated Mr. Maggi's [Sixth] Amendment right to confront the witnesses against him, to present evidence in his favor, and to a fair trial, and violated Mr. Maggi's Fourteenth Amendment due process rights when it made evidentiary rulings at Mr. Maggi's trial not allowing the admission in evidence of Mr. Maggi's legal adult pornography collection as evidence of his propensity to commit the crimes with which he as charged, which was inflammatory and unduly prejudiced Mr. Maggi. | Doc. 28 at 33 (state law only). |
| A(5) | The trial court violated Mr. Maggi's Sixth Amendment right to confront the witnesses against him and present evidence in his favor by not allowing Mr. Maggi to depose the victims in his criminal case, thus depriving him of the ability to evaluate certain impeachment evidence, by applying the State rape shield law, as that law is unconstitutional as applied to Mr. Maggi in his criminal case, in that it caused him to be denied his Sixth Amendment rights to confront the evidence against him and to present evidence in his favor, and violated his Fourteenth Amendment due process rights. | Doc. 28 at 97. |
| A(6)(b) | The trial court violated Mr. Maggi's Fourteenth Amendment right to due process when it misused the State rape shield law by preventing Mr. Maggi, on multiple occasions, from conducting adequate cross-examination by disallowing certain impeachment relevant to the witnesses' credibility. | Doc. 40-2 at 11-14 (state law only). |
| A(8) | The trial court violated Mr. Maggi's Fourteenth Amendment due process rights by improperly denying Mr. Maggi's motion to dismiss the indictments against him which alleged that Mr. Maggi had committed drug offenses, when the indictments alleged that the substance in question "purported" to be drugs, in contravention of the language in the | Doc. 28 at 33 (state law only). |

| | | |
|---|---|---|
| | statute Mr. Maggi was charged with violating, which uses the word "represented" instead of "purported." | |
| A(9) | The trial court violated Mr. Maggi's Fifth Amendment right not to be subject to double jeopardy by improperly sentencing Mr. Maggi to consecutive sentences on his drug charges. | Doc. 28 at 33 (state law only). |
| A(10) | The trial court violated Mr. Maggi's Sixth Amendment right to a fair trial and his Fourteenth Amendment right to due process by not allowing Mr. Maggi to amend his court filings. | NA. |
| A(11) | The trial court violated Mr. Maggi's Sixth Amendment right to a speedy trial and Fourteenth Amendment right to due process by requiring that Mr. Maggi sign speedy trial waivers when he asked for continuances in his criminal case, as the requested continuances were necessitated by the State "continually den[ying] discovery," and/or because jail officials where Mr. Maggi was detained pretrial denied Mr. Maggi access to discovery materials which the State had provided to him. | NA. |
| A(12) | The trial court violated Mr. Maggi's Fourteenth Amendment right to due process by allowing Mr. Maggi to be convicted of drug charges on insufficient evidence, as the State never introduced any actual drugs into evidence. | Doc. 28 at 33, 98 (state law only). |
| A(13) | The trial court violated Mr. Maggi's Sixth Amendment right to be charged with a felony by a grand jury indictment, and his Fourteenth Amendment due process rights, by permitting the State to prosecute Mr. Maggi on a charge that he sexually assaulted J.M. when the conduct alleged could not have occurred within the time frame in the indictment. | Doc. 28 at 98. |
| A(14) | The trial court violated Mr. Maggi's federal constitutional rights as follows: The trial court denied a number of Mr. Maggi's pro se motions as untimely when the motions were filed only one month after Mr. Maggi gained access to his discovery materials. | Doc. 28 at 98. |

| | | |
|---|---|---|
| A(15) | The trial court violated Mr. Maggi's federal constitutional rights as follows: The trial court allowed multiple indictments to proceed which charged Mr. Maggi with "numerous" crimes which stemmed from "one specific alleged interaction, a single alleged spree, without any evidence" to support prosecutions for multiple offenses. | Doc. 28 at 98. |
| A(16) | The trial court violated Mr. Maggi's Fifth Amendment right not to be subject to double jeopardy by failing to instruct the jury that some of the indictments in the case charged Mr. Maggi with "variants," or alternate theories, of a single offense, and that the jury could only convict Mr. Maggi of one such variant. | Doc. 28 at 98. |
| B(3) | Mr. Maggi was denied his Sixth Amendment right to the effective assistance of counsel, and his Fourteenth Amendment due process rights, during pretrial proceedings and at the trial in his criminal case, as follows. Trial counsel failed to obtain an expert witness to provide evidence at trial concerning the video recording of Mr. Maggi's statement to the police, after Mr. Maggi's sister retained a forensic expert to review the video recording, who provided an initial opinion from that witness that the video "had almost certainly been tampered with." | State Habeas Petition at 3-4, 21-25. |
| B(4)(a) | Mr. Maggi was denied his Sixth Amendment right to the effective assistance of counsel, and his Fourteenth Amendment due process rights, during pretrial proceedings and at the trial in his criminal case, as follows. Trial counsel failed to file the following motions: motion(s) for funds to allow Mr. Maggi to retain an expert witness to testify to that the video recording of Mr. Maggi's statement to the police "had almost certainly been tampered with." | State Habeas Petition at 3-4, 21-25. |
| B(4)(b)(i) | Mr. Maggi was denied his Sixth Amendment right to the effective assistance of counsel, and his Fourteenth Amendment due process rights, during pretrial proceedings and at the trial in his criminal case, as follows. Trial counsel failed to file the following motions: motion for | State Habeas Petition at 30. |

| | discovery to obtain complete and legible copies of all of the discovery materials. | |
|---|---|---|
| B(4)(b)(ii) | Mr. Maggi was denied his Sixth Amendment right to the effective assistance of counsel, and his Fourteenth Amendment due process rights, during pretrial proceedings and at the trial in his criminal case, as follows: Trial counsel failed to file the following motions: motion for discovery to obtain information concerning two images which were not included in the report of the State forensic laboratory's analysis of Mr. Maggi's computer. | State Habeas Petition at 30. |
| B(4)(b)(iii) | Mr. Maggi was denied his Sixth Amendment right to the effective assistance of counsel, and his Fourteenth Amendment due process rights, during pretrial proceedings and at the trial in his criminal case, as follows: Trial counsel failed to file the following motions: motion for discovery to obtain chain of custody information for all of the State's evidence/exhibits. | State Habeas Petition at 30. |
| B(4)(b)(iv) | Mr. Maggi was denied his Sixth Amendment right to the effective assistance of counsel, and his Fourteenth Amendment due process rights, during pretrial proceedings and at the trial in his criminal case, as follows: Trial counsel failed to file the following motions: motion for discovery to obtain recordings of hearings held in the Circuit Court related to the State's efforts to obtain warrants relevant to Mr. Maggi's case | State Habeas Petition at 30. |
| B(4)(b)(v) | Mr. Maggi was denied his Sixth Amendment right to the effective assistance of counsel, and his Fourteenth Amendment due process rights, during pretrial proceedings and at the trial in his criminal case, as follows: Trial counsel failed to file the following motions: motion for discovery to obtain recordings of interactions between the prosecution and any witness, including the victims, for the purpose of determining whether the victims or other witnesses with conflicting stories were | NA. |

| | coached to testify consistently with one another, and whether the victims were tainted by leading questions they were asked during the state's investigation. | |
|---|---|---|
| B(4)(b)(vi) | Mr. Maggi was denied his Sixth Amendment right to the effective assistance of counsel, and his Fourteenth Amendment due process rights, during pretrial proceedings and at the trial in his criminal case, as follows: Trial counsel failed to file the following motions: motion for discovery to obtain the victims' academic records from Plymouth Regional High School for the period of time during and after the 2011-2012 school year. | State Habeas Petition at 44. |
| B(4)(b)(vii) | Mr. Maggi was denied his Sixth Amendment right to the effective assistance of counsel, and his Fourteenth Amendment due process rights, during pretrial proceedings and at the trial in his criminal case, as follows: Trial counsel failed to file the following motions: motion for discovery to obtain a record of what days school was cancelled at Plymouth Regional High School, including snow days, during the 2011-2012 school year. | State Habeas Petition at 44. |
| B(4)(b)(viii) | Mr. Maggi was denied his Sixth Amendment right to the effective assistance of counsel, and his Fourteenth Amendment due process rights, during pretrial proceedings and at the trial in his criminal case, as follows: Trial counsel failed to file the following motions: motion for discovery to obtain images, videos and other potentially exculpatory evidence obtained from any computer seized during the investigation and prosecution of Mr. Maggi's criminal case. | State Habeas Petition at 44. |
| B(4)(b)(ix) | Mr. Maggi was denied his Sixth Amendment right to the effective assistance of counsel, and his Fourteenth Amendment due process rights, during pretrial proceedings and at the trial in his criminal case, as follows: Trial counsel failed to file the following motions: motion for discovery to obtain Mr. Maggi's cellphone records which were in the | State Habeas Petition at 44. |

| | | | |
|---|---|---|---|
| | State's possession, and were not otherwise available to Mr. Maggi, as those records would show that Mr. Maggi had little or no contact with any of the victims, to impeach the victims' statements that Mr. Maggi called them incessantly. | |
| B(4)(c) | Mr. Maggi was denied his Sixth Amendment right to the effective assistance of counsel, and his Fourteenth Amendment due process rights, during pretrial proceedings and at the trial in his criminal case, as follows: Trial counsel failed to file the following motions: motion(s) to allow Mr. Maggi to see the physical evidence in the State's possession in person prior to trial. | State Habeas Petition at 51. |
| B(4)(d) | Mr. Maggi was denied his Sixth Amendment right to the effective assistance of counsel, and his Fourteenth Amendment due process rights, during pretrial proceedings and at the trial in his criminal case, as follows: Trial counsel failed to file the following motions: motion(s) to depose James Dorr, an individual who had publicly stated that he orchestrated the evidence against Mr. Maggi, and whose deposition was necessary to adequate trial preparation. | State Habeas Petition at 44. |
| B(4)(e) | Mr. Maggi was denied his Sixth Amendment right to the effective assistance of counsel, and his Fourteenth Amendment due process rights, during pretrial proceedings and at the trial in his criminal case, as follows: Trial counsel failed to file the following motions: motion for a bill of particulars. | State Habeas Petition at 30.[16] |
| B(4)(f)(i) | Mr. Maggi was denied his Sixth Amendment right to the effective assistance of counsel, and his Fourteenth Amendment due process rights, during pretrial proceedings and at the trial in his criminal case, as | NA. |

---

[16]    Maggi did raise the underlying claim regarding his constitutional right to a bill of particulars in his notice of discretionary appeal from the state habeas order, but he did not frame it in terms of a Sixth Amendment ineffective assistance of counsel claim. Doc. 28 at 99.

| | | |
|---|---|---|
| | follows: Trial counsel failed to file the following motions: Motion(s) for dismissal of the indictments charging Maggi with individual sexual assaults, on the grounds that the prosecution failed to provide discovery regarding the sexual offenses charged. | |
| B(4)(f)(iii) | Mr. Maggi was denied his Sixth Amendment right to the effective assistance of counsel, and his Fourteenth Amendment due process rights, during pretrial proceedings and at the trial in his criminal case, as follows: Trial counsel failed to file the following motions: Motion(s) for dismissal of the indictments charging Maggi with individual sexual assaults, on the grounds that those indictments were otherwise defective. | State Habeas Petition at 42-50. |
| B(4)(q) | Mr. Maggi was denied his Sixth Amendment right to the effective assistance of counsel, and his Fourteenth Amendment due process rights, during pretrial proceedings and at the trial in his criminal case, as follows: Trial counsel failed to file the following motions: motion(s) to reconsider the trial court's order concerning the <u>Howard</u> hearing conducted in Mr. Maggi's criminal case. | State Habeas Petition at 53. |
| B(4)(r) | Mr. Maggi was denied his Sixth Amendment right to the effective assistance of counsel, and his Fourteenth Amendment due process rights, during pretrial proceedings and at the trial in his criminal case, as follows: Trial counsel failed to file the following motions: motion(s) to reconsider the trial court's order denying Mr. Maggi's motion to suppress evidence which Mr. Maggi alleges was obtained pursuant to an improperly issued warrant. | State Habeas Petition at 53. |
| B(5) | Mr. Maggi was denied his Sixth Amendment right to the effective assistance of counsel, and his Fourteenth Amendment due process rights, during pretrial proceedings and at the trial in his criminal case, as follows: After a bona fide question was raised as to Mr. Maggi's competency to stand trial, trial counsel allowed Mr. Maggi's trial to proceed without a hearing to determine Mr. Maggi's competency. | NA. |

| B(6) | Mr. Maggi was denied his Sixth Amendment right to the effective assistance of counsel, and his Fourteenth Amendment due process rights, during pretrial proceedings and at the trial in his criminal case, as follows: Trial counsel failed to have excluded from trial the testimony of multiple State's witnesses, which testimony was unrelated to the offenses charged, and which amounted to impermissible character evidence, which was inflammatory and unduly prejudiced Mr. Maggi. | NA. |
|------|------|------|
| D(1) | Prior to and during trial, the prosecutors in Mr. Maggi's criminal case engaged in systemic, willful, and malicious prosecutorial misconduct, in violation of Mr. Maggi's Sixth Amendment right to a fair trial and Fourteenth Amendment right to due process as, as follows. Prosecutors repeatedly falsely stated, in hearings and court filings, that they had provided Mr. Maggi with discovery and that Mr. Maggi could access those materials at the jail where he was detained, resulting in the trial court's denial of Mr. Maggi's motion(s) for discovery depositions on the basis that the discovery depositions were necessary as discovery materials had been provided, and was available, to Mr. Maggi. | Doc. 28 at 100. |
| D(2) | Prior to and during trial, the prosecutors in Mr. Maggi's criminal case engaged in systemic, willful, and malicious prosecutorial misconduct, in violation of Mr. Maggi's Sixth Amendment right to a fair trial and Fourteenth Amendment right to due process as, as follows. Prosecutors made false statements in hearings and court filings indicating that the victims' testimony would not change at trial. | Doc. 28 at 99, 100. |
| D(3) | Prior to and during trial, the prosecutors in Mr. Maggi's criminal case engaged in systemic, willful, and malicious prosecutorial misconduct, in violation of Mr. Maggi's Sixth Amendment right to a fair trial and Fourteenth Amendment right to due process as, as follows. Prosecutors withheld "key" information from Mr. Maggi. | Doc. 28 at 100. |

| D(4) | Prior to and during trial, the prosecutors in Mr. Maggi's criminal case engaged in systemic, willful, and malicious prosecutorial misconduct, in violation of Mr. Maggi's Sixth Amendment right to a fair trial and Fourteenth Amendment right to due process as, as follows. After prosecutors represented, at pretrial hearings, that Mr. Maggi had received all of the information concerning the evidence the State intended to use at trial to prove the drug offenses charged, State witnesses testified to "many uncharged bad acts" attributed to Mr. Maggi without notification that such evidence would be introduced at trial. | Doc. 28 at 99. |